**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darren Wietecha,<br><br>        Plaintiff,<br><br>vs.<br><br>Dollarhide Financial Group, Inc., Massachusetts Mutual Life Ins. Co., CM Life Ins. Co. and MML Bay State Life Ins. Co.,<br><br>        Defendants. | No. CV 04-1862-PHX-DGC<br><br>**ORDER** |

Defendants Massachusetts Mutual Life Insurance Company, C.M. Life Insurance Company, and MML Bay State Life Insurance Company (collectively, "MassMutual") move for summary judgment. Doc. #47. Defendant Dollarhide Financial Group, Inc. ("Dollarhide") joins the motion for summary judgment. Doc. # 48.[1]

**I.     Background.**

Plaintiff joined Dollarhide, MassMutual's general agent in Arizona and New Mexico, as an insurance agent in March 2001. Doc. #47 at 2. The agreement between Dollarhide and Plaintiff states that nothing in the contract "shall be construed as creating the relationship of an employer and employee" between the parties. *Id.*

---

[1] The Court will deny the request for oral argument because the parties have submitted memoranda thoroughly discussing the law and evidence, and the Court concludes that oral argument will not aid its decision process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

From May 2003 through August 2003, Plaintiff complained to Dollarhide about stressors in his life. *Id.* at 4. Plaintiff states that he was suffering from serious depression and anxiety, accompanied by physical health problems, Doc. #51 at 15, but he did not take sick leave or apply for disability, Doc. #47 at 16. On August 7, 2003, Plaintiff was arrested at work on assault charges and escorted out of the office in front of the Dollarhide staff. Doc. #47 at 3-4. Dollarhide terminated its relationship with Plaintiff in late August 2003, stating in a letter to the office ("Office Letter") that: "[a]ctions by any individual that could tarnish this organization or MassMutual's name and image are not acceptable." *Id.* Following Plaintiff's termination, MassMutual submitted a form to the National Association of Securities Dealers ("NASD") that disclosed the reasons for Plaintiff's termination. *Id.* at 4.

Plaintiff now brings a claim against Defendants for defamation and violations of the Family Medical Leave Act ("FMLA"). *See* Doc. #51. Plaintiff asserts negligence as an alternative theory of recovery. *Id.* at 16.

In October 2003, Plaintiff filed a voluntary petition for bankruptcy. Doc. #47 at 7-8. On his schedule B form, under the section entitled "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," Plaintiff listed a "possible claim for wrongful termination against Dollar Hoc (*sic*) Financial Group LLC." Doc. #53 Ex. 17. The bankruptcy trustee requested all information pertaining to the alleged termination claim, including the employment contract and phone number of Plaintiff's direct supervisor. *Id.* Ex. 30. Plaintiff disclosed a termination letter ("Termination Letter") in which Dollarhide mentions MassMutual as an affiliate. *Id.* Ex. 24. Plaintiff failed to disclose the defamation, FMLA, and negligence claims he now asserts in this Court. Doc. #47 at 5.

The bankruptcy court discharged Plaintiff's debt on July 29, 2004. Doc. #56 at 3. Plaintiff filed this lawsuit on August 6, 2004, approximately one week after the conclusion of his bankruptcy proceeding. *Id.*

Defendants argue that the doctrine of judicial estoppel bars plaintiffs claims against MassMutual and Dollarhide. Doc. #47 at 2. The Court agrees.

## II.   Discussion.

The doctrine of judicial estoppel protects the integrity of the judicial process by precluding a party "from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). "Federal law governs the application of judicial estoppel in federal courts." *Johnson v. Oregon Dep't of Human Res., Rehab. Div.*, 141 F.3d 1361, 1364 (9th Cir. 1998).

The Supreme Court has listed three factors that may be considered in deciding whether judicial estoppel should be applied: (1) whether a party's later position is "clearly inconsistent" with its earlier position, (2) "whether the party has succeeded in persuading a court to accept that party's earlier position," and (3) whether the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). These factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* The Ninth Circuit has considered these factors when applying judicial estoppel in a bankruptcy context. *See Hamilton*, 270 F.3d at 782-86.

"The Bankruptcy Code and Rules 'impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*.'" *Id.* at 785 (quoting *In re Coastal Plains*, 179 F.3d 197, 207-08 (5th Cir. 1999)) (emphasis in original). "'[T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.'" *Id.* (quoting *In re Coastal Plains*, 179 F.3d at 208). The debtor's duty to disclose potential claims is ongoing throughout the bankruptcy proceeding. *Id.*

The Ninth Circuit has held that "[i]n the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Id.* at 783; *see also Hay v. First Interstate Bank of Kalispell*, 978 F.2d 555 (9th Cir. 1992) (invoking judicial estoppel

- 3 -

to prevent a party from asserting a claim not disclosed in previous bankruptcy proceeding). Judicial estoppel will be applied if the debtor has enough facts to know that a potential cause of action exists, but does not amend his bankruptcy schedules or disclosure statements to include the potential action. *Hamilton*, 270 F.3d at 784.

The factors identified by the Supreme Court in *New Hampshire* are present in this case. First, Plaintiff's position in this Court is clearly inconsistent with the position taken in his bankruptcy proceeding. Plaintiff's bankruptcy filings included a possible wrongful termination claim against Dollarhide, Doc. #53 Ex. 17, but did not include the defamation, FMLA, or negligence claims asserted against Dollarhide and MassMutual in this case, Doc. #56 at 2.

Plaintiff claims that the position asserted in his bankruptcy proceeding is "identical" to the position taken in this case. Doc. # 51 at 5. He argues that the bankruptcy trustee had notice of the present claims because Plaintiff included a possible wrongful termination claim against Dollarhide, saw Dollarhide and MassMutual "as one and the same," and disclosed the Termination Letter which mentioned MassMutual. *Id*. He also asserts that the trustee investigated the wrongful termination claim. *Id.*

Although Plaintiff's defamation claim arises from events related to his termination at Dollarhide, the claim is conceptually distinct from a wrongful termination claim and the evidence does not show that the trustee had notice of the defamation claim. Plaintiff does not claim to have disclosed to the bankruptcy trustee the evidence relevant to his defamation claim such as the Office Letter and the NASD form. Plaintiff's FMLA and alternative negligence claims are also of a different nature and extent than the wrongful termination claim, and the information Plaintiff disclosed is not sufficient notice of the claims. "Regardless, notifying the trustee by mail or otherwise is insufficient to escape judicial estoppel. . . . [Plaintiff] is required to have amended his disclosure statements and schedules to provide the requisite notice . . . ." *Hamilton* 270 F.3d at 784. Plaintiff never did so.

Second, Plaintiff has succeeded in persuading a court to accept his earlier position. In the bankruptcy context, a discharge of debt constitutes an acceptance by a court of the

1  debtor's position and provides a basis for judicial estoppel.  *Id.*; *see also In re Associated*
2  *Vintage Group, Inc.*, 283 B.R. 549, 566 (9th Cir.BAP 2002).  In this case, the bankruptcy
3  court discharged Plaintiff's debt and terminated the proceeding.  Doc. #56 at 3.

4  Third, Plaintiff would derive an unfair advantage if permitted to proceed with the
5  claims after his debt has been discharged.  "The courts will not permit a debtor to obtain
6  relief from the bankruptcy court by representing that no claims exist and then subsequently
7  to assert those claims for his own benefit in a separate proceeding."  *Hamilton*, 270 F.3d
8  at 785 (citation and quotations omitted); *Schertz-Nelson v. AT&T Corp.*, No. Civ. 99-555-
9  PHX-SMM, 2003 WL 22047646, at *7 (D.Ariz. July 8, 2003) (finding that debtor "clearly
10 gained the advantage of discharge of her liabilities by concealing her pending claim").

11 Plaintiff argues that judicial estoppel is only an appropriate remedy if the inconsistent
12 position is asserted in bad faith.  Doc. #51 at 4.  To support this argument, Plaintiff cites
13 *Ryan Operations G.P v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d. Cir. 1996),
14 which stated that an "intent to play fast and loose with the court" must be present for the
15 application of judicial estoppel.  The Third Circuit did not find bad faith in *Ryan*, noting that
16 the debtor's nondisclosed claims were offset by nondisclosed liabilities, creditors would
17 receive 91% of any recovery, the debtor had authorization to pursue the claims, and
18 disclosure would not have led to a different result in the bankruptcy proceeding.  *Id.* at 363-
19 65.  Similar facts do not exist in this case.

20 In a non-bankruptcy context, the Ninth Circuit has stated that judicial estoppel does
21 not apply "[i]f incompatible positions are based not on chicanery, but only on inadvertence
22 or mistake."  *Johnson*, 141 F.3d at 1369 (analyzing an Americans with Disabilities Act
23 claim); *but see Schertz-Nelson,* 2003 WL 22047646 at *7 (stating that ADA cases are "easily
24 distinguishable" from bankruptcy circumstances).  The Fifth Circuit has reviewed the
25 jurisprudence and concluded that "in considering judicial estoppel *for bankruptcy cases*, the
26 debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general,
27 the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their
28 concealment."  *In re Coastal Plains*, 179 F.3d at 210 (emphasis in original).  The Ninth

- 5 -

1 Circuit essentially adopted the Fifth Circuit's approach by invoking judicial estoppel "when
2 the debtor has *knowledge* of enough facts to know that a potential cause of action exists
3 during the pendency of the bankruptcy, but fails to amend his schedules." *Hamilton*, 270
4 F.3d at 784 (emphasis added); *see also Hay*, 978 F.2d at 556 (applying judicial estoppel
5 without making an inquiry as to whether the debtor was "playing fast and loose" with the
6 court); *Shertz-Nelson* 2003 WL 22047646 at *7 (applying judicial estoppel after finding a
7 motive for concealment).[2]

8   Several facts show that Plaintiff had enough knowledge to require listing of his
9 present claims on his bankruptcy schedules: (1) Plaintiff's defamation, FMLA, and
10 negligence claims are all based on events that occurred before Plaintiff filed for bankruptcy,
11 (2) Plaintiff does not dispute that he was aware of the alleged claims prior to filing for
12 bankruptcy, (3) in an e-mail dated September 5, 2003 (one month before his bankruptcy was
13 filed), Plaintiff threatened MassMutual's CEO that he would talk to an attorney about the
14 "slander" in the Office Letter and NASD form, and (4) Plaintiff filed this action only one
15 week after the termination of his bankruptcy. Doc. #56 at 2-4.

16   Moreover, as discussed above, Plaintiff would gain advantage by not disclosing the
17 potential claims – receiving a discharge from his debt and then asserting the claims for his
18 own benefit. Plaintiff plainly had a motive for concealment. *See Schertz-Nelson*, 2003 WL
19 22047646 at *7 (finding motive when plaintiff stood to gain from asserting a claim after the
20 discharge of her liabilities).

21   In short, the Court finds that the nondisclosure of Plaintiff's claims was not based on
22 inadvertence. Plaintiff had both knowledge of the claims and a motive for concealment.
23 Furthermore, Plaintiff has not shown the presence of any of the circumstances which led the
24 *Ryan* court to deny the application of judicial estoppel.

25

---

26 [2]*Ryan*, which Plaintiff relies on, noted that the "combination of *knowledge* of the
27 claim and *motive* for concealment in the face of an affirmative duty to disclose gave rise to
an *inference* of intent sufficient to satisfy the requirements of judicial estoppel." 81 F.3d at
28 363 (emphasis added).

The Court concludes that Plaintiff should be judicially estopped from pursuing his present claims against Dollarhide and MassMutual. Given this decision, the Court need not address the other issues raised by Defendants' motion for summary judgment.

**IT IS ORDERED:**

1. Defendant MassMutual's motion for summary judgment, Doc. #47, and Dollarhide's joinder, Doc. #48, are **granted**.
2. The Clerk is directed to enter judgment in favor of Dollarhide and MassMutual and terminate this case.

DATED this 27th day of June, 2006.

*David G. Campbell*
David G. Campbell
United States District Judge